UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAMELA LINTON-HOOKER,

    Plaintiff,

v.

AIG LIFE INSURANCE CO.,

    Defendant.
_____/

Case No. 1:11-cv-101

HON. JANET T. NEFF

**OPINION**

    This case arises from the October 26, 2010 denial of Plaintiff's claim for accidental death benefits under the Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq*. The Administrative Record (AR) was filed with this Court on June 10, 2011 (Dkts 13-14). Pending before the Court are the parties' cross-motions for Judgment on the Administrative Record (Pl. Mot., Dkt 23; Def. Mot., Dkt 25), motions to which each party has filed a response (Pl. Resp., Dkt 29; Def. Resp., Dkt 30). Having carefully considered the parties' briefs and the Administrative Record, the Court concludes, for the reasons that follow, that Plaintiff's motion should be denied and Defendant's motion granted.

**I. BACKGROUND**

    Plaintiff was the spouse of Paul Linton-Hooker, who died on December 26, 2008, around the time he and Plaintiff were scuba diving off the coast of Belize (AR 30, 765-66).[1] According to

---

[1] The pertinent facts are summarized here with reference to the documents within the Administrative Record. *See Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 619 (6th Cir.

Plaintiff, she and the decedent "had just gotten into the water; we were on the surface – he appeared to go unconscious in that he started sinking with no struggle" (*id.* 1-2). The December 31, 2008 autopsy report completed in Belize by Dr. Mario Estradabran identified the cause of death as "bronchial aspiration asphyxia" (*id.* 74).

Plaintiff has a Group Accident Insurance Policy from her employer, Wolverine Worldwide, Inc., and she had named the decedent as a person insured by the policy. The parties do not dispute that the accidental death insurance policy is an "employee benefit plan" as defined in the ERISA. The policy provides an Accidental Death Benefit, stating that "[i]f Injury to the Insured Person results in death within 365 days of the date of the accident that caused the Injury, the Company will pay 100% of the Principal Sum" (AR 348). "Injury," in turn, is defined as "bodily injury caused by an accident occurring while this Policy is in force as to the person whose injury is the basis of claim and resulting directly and independently of all other causes in a covered loss" (*id.* 347). The Policy specifically excludes from coverage "any loss caused in whole or in part by, or resulting in whole or in part from . . . sickness, disease or infections of any kind" (*id.* 350). Payment for loss of life of an Insured Person is made "[u]pon receipt of due written proof of death" (*id.* 351).

On March 30, 2009, Plaintiff submitted a claim for accidental death benefits arising from the decedent's December 26, 2008 death (AR 1-2). Defendant denied the claim on October 5, 2009, concluding that no benefits were payable under the policy based on its determination that "substantial evidence exists that your husband died from sudden incapacitation, due to heart disease, and that this heart disease contributed in whole or in part to his death" (*id.* 401). Defendant

1998) (Gilman, J., concurring) (district court review generally limited to administrative record).

concluded that the decedent "did not die from a bodily injury caused by an accident, resulting directly and independently of all other causes" (*id.*).

In support of its determination, Defendant relied on the report of Joseph Cohen, M.D., a forensic pathologist from whom Defendant had sought an opinion. Dr. Cohen related that the decedent's past medical history was "notable for coronary artery disease, status post coronary artery intervention (11-18-05), hypertension, hypercholesterolemia, and tobacco (one to three packs per day for 30 years), marijuana, and alcohol use" (AR 411). The decedent's medical records indicated that in December 2005, the decedent experienced chest pains "right after he electively decided to jump into a lake" (*id.* 245). Dr. Cohen also related that the decedent previously reported, in June 2006, developing chest pain at scuba depths of eighty-five feet or more (*id.* 412). Dr. Cohen concluded that "[t]he primary, proximate cause of [the decedent's] incapacitation and cause of death is heart disease" (*id.* 401). Dr. Cohen explained that "[c]ardiac hypertrophy (due to long standing hypertension) and/or coronary artery disease predispose individuals to cardiac arrhythmias and sudden cardiac death, especially in the setting of increased metabolic demands or decreased oxygen levels. Sudden incapacitation at the water surface prior to scuba descent is strongly supportive of a natural disease mechanism as the primary etiology of incapacitation and death" (*id.*).

As for the December 31, 2008 autopsy report completed in Belize, which identified the manner of death as "bronchial aspiration asphyxia," Dr. Cohen explained that "[i]t is uncertain to what degree, if any, aspiration of water (drowning) contributed to death" (AR 413). Dr. Cohen reasoned that "[i]t is likely that some water was aspirated following incapacitation by one or more cardiac disease factors, prior to being pulled from the water. It is reasonable to conclude that some aspiration of water occurred because Mr. Linton-Hooker became unresponsive in a body of water.

3

Any degree of aspiration of water defines the manner of death as 'Accident,' though the primary cause of death is due to heart disease (natural causes)" (*id.*).

On August 11, 2010, Plaintiff filed an appeal from the benefits denial. Defendant sought a second forensic pathologist opinion from Andrew M. Baker, M.D. Dr. Baker described the Belize autopsy report as "woefully inadequate," noting that "[n]o mention is made whatsoever of the patency of Mr. Linton-Hooker's coronary arteries" and "no indication that any of the organs were dissected at any level of detail" (AR 839). Dr. Baker opined that it was "unfortunate that the 'autopsy' did not document the cardiac findings, since heart disease is far and away the most likely natural disease in this case, particularly in light of Mr. Linton-Hooker's known cardiac history" (*id.* 841). Dr. Baker determined that "[n]othing in the supplied materials indicates that any injury or physical trauma was the proximate cause of death" (*id.*).

Dr. Baker stated that "[t]he unqualified term 'bronchial aspiration asphyxia'" used in the autopsy report is "meaningless in this context" (AR 840). Like Dr. Cohen, Dr. Baker explained that "[a]s all experienced medical examiners know, some aspiration of gastric contents into the airways as part of the dying process is common. It becomes even more so when CPR is performed, as insufflation of air into the stomach displaces gastric contents. Dr. Estradabran's failure to recognize this as an artifact of the dying process only further calls the autopsy and cause of death opinions into question" (*id.*). Dr. Baker opined that "[s]ober, neurologically normal adults who are speaking with someone one moment and unconscious and dying the next moment are not dying because they suddenly aspirated their own gastric contents" (*id.*). On October 26, 2010, Defendant's ERISA Appeals Committee rendered its decision to uphold the denial of benefits (*id.* 845-46).

On January 27, 2011, Plaintiff filed this civil enforcement action against Defendant, alleging a wrongful denial of benefits, 29 U.S.C. § 1132(a)(1)(B) (Count I); alleging that she is entitled to statutory penalties under ERISA § 502, 29 U.S.C. § 1132(c)(1), for failing to timely provide the administrative record (Count II); and requesting attorneys' fees, 29 U.S.C. § 1132(g)(1) (Count III).

## II.  ANALYSIS

**A.     Count I:  Denial of Benefits**

In Count I, which contains Plaintiff's challenge to the adverse benefits decision, Plaintiff claims that Defendant "failed to properly analyze this claim pursuant to the terms of the Subject Policy and pursuant to the actual facts" (Compl. ¶ 53).  According to Plaintiff, "Paul Linton-Hooker's death by Bronchial Aspiration Asphyxia–vomiting of stomach contents leading to drowning, is an 'accidental death' pursuant to the terms of the Subject Policy and is thus covered pursuant to the terms of the Subject Policy" (*id.* ¶ 52).  Plaintiff also claims that "[b]ecause AIG is profit motivated and since failure to pay the death benefits at issue in this matter is a positive economic result for AIG, it had a conflict of interest, and its actions in denying payment of this claim should not be given deference by this Court" (*id.* ¶ 54).

Courts ordinarily review a denial of ERISA benefits under a de novo standard.  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  Where "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," courts apply an arbitrary and capricious standard of review.  *Id.; see also DeLisle v. Sun Life Assurance Co. of Canada*, 558 F.3d 440, 444 (6th Cir. 2009); *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 380 (6th Cir. 1996).  In order for a court to apply the arbitrary

5

and capricious standard, the grant of discretion to the administrator must be clear. *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 555 (6th Cir. 1998) (en banc).

When applying a de novo standard in the ERISA context, the role of the court reviewing a denial of benefits "is to determine whether the administrator ... made a correct decision." *Hoover v. Provident Life & Accident Ins. Co.*, 290 F.3d 801, 808-09 (6th Cir. 2002) (quoting *Perry v. Simplicity Eng'g*, 900 F.2d 963, 967 (6th Cir. 1990)). The administrator's decision is accorded no deference or presumption of correctness. *Id.* The review is limited to the record before the administrator, and the court must determine whether the administrator properly interpreted the plan and whether the insured was entitled to benefits under the plan. *Id.*

The arbitrary and capricious standard of review, which, though highly deferential, nevertheless requires "'some review of the quality and quantity of the medical evidence and the opinions on both sides of the issues.'" *Curry v. Eaton Corp.,* 400 F. App'x 51, 57 (6th Cir. 2010) (quoting *McDonald v. W.-S. Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003)). Under the arbitrary and capricious standard, the court will "uphold the administrator's decision 'if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence.'" *Glenn v. MetLife*, 461 F.3d 660, 666 (6th Cir. 2006) (quoting *Baker v. United Mine Workers of Am. Health & Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991)), *aff'd* 554 U.S. 105 (2008).

Defendant asserts that because the policy requires a claimant to submit "due written proof," the arbitrary and capricious standard of review applies to this Court's review of its benefits denial (Def. Mot., Dkt 25 at 2, 10, 19-21; Def. Resp., Dkt 30 at 6-8, citing *Fendler v. CNA Group Life Assurance Co.*, 247 F. App'x 754, 759 (6th Cir. 2007) ("Our circuit has repeatedly held that this 'due proof' language confers discretion on the claims administrator to determine what type of proof

is 'due,' such that the court must apply the arbitrary and capricious standard of review.")). Plaintiff rejects Defendant's assertion, arguing that the de novo standard of review applies because the "due written proof" language is ambiguous, and any ambiguity must be construed against Defendant, which drafted the policy language (Pl. Mot., Dkt 29 at 2-11, 16-19, citing *Hoover*, 290 F.3d at 808 (holding that "[t]he requirement that the insured submit written proof of loss, without more, does not contain 'a clear grant of discretion [to the administrator] to determine benefits or interpret the plan")). While the parties disagree on which standard of review applies, the Court determines that regardless of the standard, Plaintiff is not entitled to accidental death benefits under the express language of the policy.

In her cross-motion for judgment on the record, Plaintiff argues that reversal is required "based on the record and AIG's clear conflict of interest" (Dkt 24 at 19). On the former, Plaintiff argues that "[t]his Court cannot give speculative assertions by 'Dr. Joe' and Dr. Baker greater weight than Dr. Estradabran" (*id.* at 21). On the latter, in support of an alleged conflict of interest, Plaintiff emphasizes Defendant's dual status as a "profit driven company and claim administrator that pays claims out of its pockets" (*id.* at 20).

Defendant argues that Plaintiff did not bear her burden of proving that an "accident" occurred and, alternatively, did not bear her burden of proving that the decedent's death resulted from an accident, "directly and independently of all other causes" (Def. Mot., Dkt 25 at 2-3, 21-24). Defendant also argues that this Court should give Defendant's structural conflict of interest little, if any, weight because Plaintiff presents no factual support that the conflict substantially affected Defendant's decision to deny benefits (Def. Resp., Dkt 30 at 17).

This Court's inquiry is whether the decedent's death was caused solely by an accident, and not "caused in whole or in part by, or resulting from . . . sickness, disease or infections of any kind." *See Firestone*, 489 U.S. at 115 (observing that "the validity of a claim to benefits under an ERISA plan is likely to turn on the interpretation of terms in the plan at issue"). Drs. Cohen and Baker expertly opined that the decedent's death was wholly caused by his heart disease. They also competently explained how bronchial aspiration asphyxia is merely an artifact of dying, not a cause of death.

Alternatively, even assuming arguendo that the "bronchial aspiration asphyxia" determined by Dr. Estradabran constitutes an "accident," a point this Court is not convinced Plaintiff effectively made either below or in briefing to this Court, Drs. Cohen and Baker also expertly opined that the decedent's death was partially caused by his heart disease. Dr. Estradabran's autopsy report does not exclude the conclusion that the decedent's death was caused, in part, by heart disease. As Drs. Cohen and Baker effectively explained, the bronchial aspiration asphyxia and the heart disease from which the decedent suffered could have both caused the decedent's death. Specifically, Dr. Cohen acknowledged that "[a]ny degree of aspiration of water defines the manner of death as 'Accident,' though the primary cause of death is due to heart disease (natural causes)."

Plaintiff, in turn, did not supply any evidence that rebutted the conclusion that the decedent's heart disease caused his death, in whole or in part. Plaintiff did not demonstrate her entitlement to accidental death benefits under the express language of the policy.

Plaintiff properly points out the conflict of interest that exists when a plan administrator both evaluates claims for benefits and pays benefits claims. *See Glenn*, 554 U.S. at 112. However, the dual-role situation is not unique, and the Sixth Circuit Court of Appeals has rejected the argument

that "the apparent conflict of interest that exists when an administrator both decides whether an employee is eligible for benefits and pays those benefits requires the conclusion that the administrator *necessarily* has a conflict in a specific case." *Curry*, 400 F. App'x at 58 (citing *Cooper v. Life Ins. Co. of N. Am.*, 486 F.3d 157, 165 (6th Cir. 2007)). Rather, the court "looks to see if there is evidence that the conflict in any way influenced the plan administrators' decision." *Hunter v. Life Ins. of N. Am.*, 437 F. App'x 372, 376 (6th Cir. 2011). "[C]onflicts are but one factor among many that a reviewing judge must take into account." *Glenn*, 554 U.S. at 117. This Court's review of the record does not reveal evidence that the conflict improperly influenced Defendant's decision in this case.

In sum, reviewing the evidence and decision-making process as a whole and weighing the factors discussed above, the Court determines that Defendant correctly denied Plaintiff's claim for accidental death benefits. Therefore, this Court will enter Judgment on Count I in favor of Defendant and against Plaintiff.

**B.      Count II: Statutory Penalties**

In Count II, Plaintiff alleges that she requested the entire administrative record, and any documents that were reviewed or relied upon by Defendant, and that Defendant failed to provide all of the documents within 30 days as required by ERISA (Compl. ¶¶ 58-59).

In support of its motion for Judgment on the Record, Defendant argues that Count II should be dismissed because the statutory provision upon which Plaintiff relies, 29 U.S.C. § 1132(c), does not provide the relief she seeks and, in any event, Plaintiff received a complete copy of the record (Def. Mot., Dkt 25 at 3, 30-33). Indeed, the record reflects receipt by Plaintiff, through her attorney, of a copy of the record within thirty days of her request (AR 604-05, 620-21). Moreover, Plaintiff

did not address Defendant's argument for Judgment in its favor on Count II, either in her response to Defendant's motion or in her motion.

Assuming that Plaintiff has not abandoned her claim in Count II, this Court is not convinced of the propriety of awarding the requested relief on these facts. *See VanderKlok v. Provident Life & Accident Ins. Co., Inc.*, 956 F.2d 610, 618 (6th Cir. 1992) (agreeing with courts holding that a violation of 29 U.S.C. § 1133 by the plan administrator does not impose liability on the plan administrator pursuant to § 1132(c)). Therefore, this Court will enter Judgment on Count II in favor of Defendant and against Plaintiff.

**C.     Count III: Attorney Fees**

Plaintiff's Count III contains her request for attorney fees (Compl. ¶¶ 60-65). Defendant contends that because Plaintiff's request is derivative of her substantive claims for benefits and statutory penalties, counts that lack merit, Count III should also be dismissed as it fails as a matter of law (Def. Mot., Dkt 25 at 3, 33 n.12). Plaintiff concedes that her request depends on this Court's determination on her claim for benefits (Pl. Resp., Dkt 29 at 21). Accordingly, this Court will also enter Judgment on Count III in favor of Defendant and against Plaintiff. *See Hardt v. Reliance Standard Life Ins. Co.*, ___ U.S. ___; 130 S.Ct. 2149, 2152 (2010) (holding that a court "in its discretion" may award fees and costs "to either party," as long as the fee claimant has achieved "some degree of success on the merits") (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 694 (1983)).

### III. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the Administrative Record (Dkt 23) is denied, and Defendant's Motion for Judgment on the Administrative Record (Dkt 25) is granted. An Order and Judgment consistent with this Opinion will issue.


DATED: March 2, 2012                              /s/ Janet T. Neff
                                                  JANET T. NEFF
                                                  United States District Judge